**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In Re ) | |
| ) | |
| HORIZON INTERIORS, LLC ) | Chapter 11, Subchapter V |
| Debtor ) | Case No.: 24-11196-JEB |
| ) | |

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDER**
**AUTHORIZING USE OF CASH AND NON-CASH COLLATERAL,**
**OFFER OF ADEQUATE PROTECTION AND**
**REQUEST FOR EMERGENCY CONSIDERATION**

NOW COMES the debtor, Horizon Interiors, LLC (the "Debtor") and pursuant to 11 U.S.C. §363(b)(1) and Fed. R. Bankr. P. 4001(b) respectfully moves this Honorable Court for an order authorizing the use of cash collateral on an interim and final basis. As explained below, expedited consideration is requested to ensure the Debtor is able to pay meet its payroll obligations on June 21, 2024. In support of this Motion, the Debtor states the following:

## INTRODUCTION AND BACKGROUND

1. On June 17, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code.

2. The Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D) and has elected to proceed under Subchapter V of Chapter 11.

3. The Debtor is operating its business as debtor-in-possession pursuant to 11 U.S.C.§§ 1107-1108 of the Bankruptcy Code.

4. The Debtor operates an interior remodeling business serving both residential and commercial property owners and managers. The Debtor's services include kitchen and bathroom remodeling, flooring replacement, custom lighting, cabinets and countertop installation and more.

5. The Debtor is owned and operated by Valentino Pitta, Jr and his wife Linda. Mr. Pitta owns 99% of the interest in the debtor and Linda owns the remaining 1%. Mr. Pitta works at, and oversees the Debtor's business operations, as his full-time employment.

6. The Debtor has been in business since it was formed by Mr. Pitta in September 2009. The Debtor grew steadily and was profitable for many years.

7. In 2018, the Debtor's largest client stopped doing business with it in favor of a larger, nationwide company which amounted to a loss of nearly 70% of its business.

8. Although the Debtor worked hard to develop new business, the COVID-19 pandemic caused nearly all of its projects to slow or stop entirely, severely reducing its income, without a significant drop in its overhead expenses.

9. Despite these challenges, the Debtor was able to continue operating and maintain current on all its obligations. Then, in July 2021 a fire in the Debtor's warehouse destroyed nearly all its inventory- worth well over one million dollars.   Although the Debtor was insured for the loss of the value of the inventory, it did not compensate for delays, lost business and other ancillary costs and that resulted, causing additional financial pressure on the Debtor.

10. By this time the Debtor's debts accrued a significant amount of trade debt, a line of credit and several credit cards in Mr. Pitta's name which were used to maintain business operations.

11. To help alleviate its cash flow issues, the Debtor took out a so-called merchant cash loan from Channell Partners Capital, LLC, with exorbitant fees and onerous payment terms, in December 2022.

12. In October 2023, the Debtor took a second merchant cash loan from Fox Capital, LLC "Fox"), again with exorbitant fees and onerous payment terms.

13. Almost immediately after taking the loan from Fox, the Debtor began receiving solicitations from other merchant lenders offering him more funding, as well as companies offering to help renegotiate the terms of the existing loans with Channel and Fox.

14. Eventually in December 2023, the Debtor engaged the services of Corporate Client Services, LLC ("Client Services") a Florida entity which offered to provide the debtor with legal services and to renegotiate its the debts with Channel and Fox.   Client Services' first instruction to the Debtor was to stop paying Channel and Fox and to begin paying them a weekly fee which Client Services would then use, after deducting their own fee, to negotiate a settlement with Channel and Fox.

15. Unfortunately, Client Services did not resolve the Debtor's debts, despite taking more than $12,000 in fees for itself. The Debtor ceased making payments to Client services in April 2024 when it became apparent that they were not helping the Debtor.

16. While the Debtor was enrolled in Client Services debt settlement program and making weekly payments, Fox sent a demand to one of the Debtor's largest customers informing it of a UCC lien it has placed on the Debtors receivables and directing the customer to turn over the funds due to the Debtor to it (Fox) instead. The Debtor's customer has not, as of the petition date, turned over any funds owed to the Debtor to either Fox or the Debtor. The Debtor is owed more than $119,000 that has been "frozen" since Fox made demand for these funds. The inability to collect these funds was the "final straw" precipitating the Debtor's bankruptcy filing. Without payment of these invoices, the Debtor has not had sufficient cash flow to remain current on its trade debts and other obligations. The Debtor intends to collect these invoices as quickly as possible during these bankruptcy proceedings.

17. Despite all these challenges, the Debtor's revenue has increased significantly asince the

18. Without the opportunity to reorganize under the Bankruptcy Code, the Debtor will be unable to continue operating.

### DEBTOR'S ASSETS AS OF THE PETITION DATE

19. As of the petition date, the Debtor's assets consist of the following:
    a. Funds held in three TD Bank accounts totaling $19,226.
    b. Accounts receivable totaling $265,334.83 of which $198,648.93 is more than 90 days old, including the $119,000 referenced above which has been frozen by Fox.
    c. Machinery and equipment estimated to be worth approximately $30,000.
    d. Inventory worth approximately $70,407.00.

### PARTIES WITH INTERESTS IN DEBTOR'S CASH COLLATERAL

20. In order of priority, the following entities have asserted security interests in the Debtor's cash collateral:

### i. Align Credit Union

Align Credit Union ("Align") holds a secured claim against the Debtor arising from a commercial promissory note given by the Debtor on October 13, 2017. Align's claim is secured by a UCC-1 Financing Statement recorded with the Massachusetts Secretary of State on October 13, 2017, securing substantially all of the Debtor's assets as collateral for its claim. As of the Petition Date, Align's claim totaled approximately $150,670.00.

### ii. Channel Partners Capital, LLC

Channel holds a secured claim arising from a Business Loan and Security Agreement dated December 2022. Channel's claim is secured by a UCC-1 Financing Statement recorded with the Massachusetts Secretary of State on December 18, 2023, securing substantially all assets of the Debtor. As of the Petition Date Channel's claim totaled approximately $35,200.00.

### iii. Fox Capital Group, Inc.

Fox holds a secured claim against the debtor arising from a so-called "Future Receivables Sale and Purchase Agreement" dated October 10, 2023. Fox's claim is secured by a UCC-1 Financing Statement recorded with the Massachusetts Secretary of State on October 12, 2023, securing as collateral the Debtors "receipts" as defined therein. As of the Petitio Date, Fox's claim totaled approximately 61,800.10.

### iv. Massachusetts Department of Revenue

The Massachusetts Department of Revenue holds a secured claim against the Debtor arising from a Massachusetts Tax Lien to enforce sales tax owed by the Debtor recorded on May 3, 2024, in the amount of $18,156.58.

### DEBTORS' USE OF CASH COLLATERAL AND OFFER OF ADEQUATE PROTECTION

21. The Debtor requires the use of cash collateral to continue to operate its business, purchase materials, pay wages and overhead expenses, including rent including rent and utilities and insurance

22. The Debtor proposes to use cash collateral in accordance with the budget projections attached hereto as Exhibit A for the period from June 17, 2024 through September 16 2024, (the "Budget").

23. As adequate protection of the Secured Creditors' interest in its collateral that they each be given replacement liens to the same extent and priority as they held over the Debtor's assets as of the Petition Date.

24. The Debtor believes that the Secured Creditors' interest in the Debtor's assets is adequately protected by the Debtor's assets described above and that no monthly adequate protection payments are necessary or required as there is not anticipated to be any diminution in the value of its collateral in the next 90 days. To the extent the Debtor collects and spends any receivables in the course of its business, its anticipated future sales will continue throughout the pendency of this bankruptcy.

## NOTICE

25. The Debtor will serve a copy of this Motion and notice of any hearing thereon to all secured creditors, taxing authorities, the 20 largest unsecured creditors and any other parties in interest and file a certificate of service forthwith.

## REQUEST FOR EXPEDITED CONSIDERATION

26. The Debtor requests emergency consideration of this Motion as it is unable to continue to maintain its operations without the immediate use of cash collateral, as reflected in the budget projections. Further, the Debtor's payroll in the total approximate amount of $____ is due to be paid on Friday June 21. Concurrently with this Motion, the Debtor has submitted a Motion For Authorization to Pay Pre-Petition Wages. However, without authorization to use cash collateral, the Debtor will have no means to pay such wages. As such, the Debtor requests an expedited hearing on or before June 20, 2024.

WHEREFORE the Debtor respectfully requests that the Court enter an order:

I. Considering this Motion on an expedited basis;

II. Authorizing the Debtor's use of cash collateral on an interim and final basis as is necessary for the continuation of its operations and in accordance with the attached Budget;

III. Determining that the Secured Creditors' interest in the Debtor's cash collateral are adequately protected by the proposed replacement liens on the Debtor's property: and

IV. Granting such further and additional relief as the Court deems appropriate under the circumstances.

        Respectfully submitted,
        Horizon Interiors, LLC
        By its attorney,

Dated: June 18, 2024        */s/ Marques C. Lipton*
        Marques C. Lipton, BBO #676087
        Lipton Law Group, LLC
        945 Concord Street
        Framingham, MA 01701
        (508) 202-0681
        marques@liptonlg.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In Re ) | |
| ) | |
| **HORIZON INTERIORS, LLC** ) | **Chapter 11, Subchapter V** |
| **Debtor** ) | **Case No. 24-11196-JEB** |
| ) | |

# CERTIFICATE OF SERVICE

I, Marques Lipton, hereby certify that I have this day served the following parties a true and correct copy of the Debtor's Motion for Authorization to Use Cash Collateral as follows:

**Via ECF**
Richard King, Esq., United States Trustee's Office
Justin Kesselman, Esq., United States Trustee's Office

**Via email**

Valentino Pitta

Dated: June 18, 2024                                            */s/ Marques C. Lipton*
                                                                                    Marques C. Lipton